IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEVELLE HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 09 C 5738 |
| | ) | |
| CHICAGO POLICE OFFICER BOYD, | ) | JUDGE CHANG |
| STAR NO. 12598; CHICAGO POLICE | ) | |
| OFFICER BELUSO, STAR NO. 19997; and | ) | MAGISTRATE COLE |
| OTHER UNKNOWN CHICAGO POLICE | ) | |
| OFFICERS, individually and as employee/ | ) | JURY DEMAND |
| Agents of the CITY OF CHICAGO, a municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | | |

## PLAINTIFF'S MOTIONS IN LIMINE

Now comes the plaintiff, LEVELLE HENRY, by and through his attorneys, the LAW

OFFICES OF JEFFREY J. NESLUND, and in connection with the impending trial herein,

submits the following motions in limine.  In support thereof plaintiff states as follows:

## PLAINTIFF'S MOTION IN LIMINE #1

**DEFENDANTS SHOULD BE BARRED FROM INTRODUCING ANY EVIDENCE OF
PLAINTIFF'S HAND WRITTEN I.P.R.A.  STATEMENT BECAUSE IT WAS NOT
DISCLOSED UNTIL AFTER DISCOVERY CLOSED**

Plaintiff has alleged he was beaten by the Defendant Chicago Police Officers during an

arrest that took place on September 16, 2008.   Plaintiff was interviewed at Jackson Park

Hospital on September 17, 2008 by an investigator for Independent Police Review Authority

(I.P.R.A.), a department within the City of Chicago which purports to investigate allegations of

police misconduct.  Plaintiff's Production Request on March 30, 2010 requested any and all

statements or documents regarding Plaintiff's arrest.  On August 11, 2010 Plaintiff's First

Supplemental Production Request specifically requested the entire I.P.R.A. file .  Despite

numerous requests for the entire I.P.R.A. file regarding Plaintiff's arrest, Mr. Henry's statement

to the I.P.R.A. investigator was not produced until January 26, 2011, ***after***  discovery closed and

this matter was scheduled for trial.

There is no excuse for such late disclosure of this statement.  The Defendants produced

Defendant Boyd's statement to I.P.R.A. prior to his deposition, yet inexplicably did not produce

the Plaintiff's statement until after the close of discovery.  The Defendants cannot to hold back

such a document until the Plaintiff has been deposed, discovery closed and the matter set for

trial, then be allowed to utilize the statement for any impeachment purposes.   Plaintiff requests

this Court bar the Plaintiff's statement to I.P.R.A. as an equitable sanction for the late disclosure

of the I.P.R.A. file.


**PLAINTIFF'S MOTION IN LIMINE #2**

**DEFENDANTS SHOULD BE BARRED FROM INTRODUCING ANY EVIDENCE OF
THE I.P.R.A.  STATEMENT OF NIDAL AL NABER BECAUSE IT WAS NOT
DISCLOSED UNTIL AFTER DISCOVERY CLOSED**

Nidal Al Naber is the manager of E & J Liquor store where the Plaintiff was arrested and

beaten by the Defendant Officers.  Mr. Naber was interviewed by an I.P.R.A. investigator on

September 17, 2008 and a typed statement was apparently signed by Mr. Naber on September

19, 2008.  At his deposition Mr. Naber testified he signed a hand written statement by the

I.P.R.A. investigator, but does not remember signing a typed statement.  The hand written

statement has never been produced.  The typed statement was not produced until January 26,

2011, after discovery was closed and the case set for trial.

At his deposition, Mr. Naber disputes certain statements attributed to him within the

typed statement, which he does not recall signing. The dispute over the accuracy of the I.P.R.A. investigator's typed statement will shift the jury's focus to the I.P.R.A. investigation itself, which the parties agree is irrelevant. (See Plaintiff's Motion in Limine No. 9).

For the same reasons stated in Plaintiff's Motion in Limine No.1 above, the I.P.R.A. statement of Mr. Naber should be barred as a discovery sanction. The Defendants cannot be rewarded for waiting until the eve of trial to produce the I.P.R.A. file regarding Plaintiff's arrest. Given the inexcusable late disclosure of the document and the fact Mr. Naber disputes the accuracy of the statement, Plaintiff requests that the I.P.R.A. statement be barred.

## PLAINTIFF'S MOTION IN LIMINE #3

**DEFENDANT SHOULD BE BARRED FROM ARGUING, REFERENCING, OR INTRODUCING EVIDENCE ANY ARGUMENT OR INFERENCE THAT ANY VERDICT WOULD HAVE A NEGATIVE IMPACT ON THE PUBLIC, POLICE SERVICES, TAXES OR THE FINANCIAL STATUS OF THE CITY OF CHICAGO.**

Pursuant to Federal Rule of Evidence 402, such evidence is irrelevant to the material issue involved in this case, that is, whether the defendants had probable cause to arrest and initiate criminal proceedings against the plaintiff. Additionally, Pursuant to Federal Rule of Evidence 403, such evidence has no probative value to the issues before the jury, and would create the possibility of significant speculation by the jury and prejudice to the plaintiff. As such, any argument or inference regarding any negative impact on the public by a Plaintiff's verdict is pure speculation and should be barred.

### Plaintiff's Motion in Limine # 4

**TO ALLOW PLAINTIFF TO CALL POLICE OFFICER WITNESSES AS HOSTILE WITNESSES**

Calling a person as an adverse witness and the use of leading questions upon direct examination is governed by Fed.R.Evid. 611( c). In relevant part, Rule 611( c) provides that leading questions can be used: "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

Police officers may be called as adverse witnesses in a § 1983 action. <u>Ellis v. City of Chicago</u>, 667 F.2d 606 (7th Cir. 1981). In <u>Ellis</u>, the Seventh Circuit held that a police officer who was employed by the City of Chicago and involved in the incident at issue "clearly qualified" as a witness identified with an adverse party pursuant to Fed.R.Evid. 611( c). Thus, pursuant to Rule 611( c), Plaintiff should be allowed to treat all Chicago Police officers in this case as adverse witnesses.

### PLAINTIFF'S MOTION IN LIMINE # 5

**DEFENDANT SHOULD BE BARRED FROM ARGUING OR REFERENCING GUN VIOLENCE or CRIME IN GENERAL IN THE CITY OF CHICAGO.**

In this case the Defendants claim they entered the E & J Liquor store to do a "premises check." They were not responding to any specific call regarding a possible suspect with a gun. In addition, the Defendants had never encountered the Plaintiff before and, therefore, had no reason to believe he was armed or dangerous. Pursuant to Federal Rule of Evidence 402, evidence or arguments regarding "gun violence" or crime in general in the City of Chicago is irrelevant to the material issue involved in this case, that is, whether the defendants had probable cause to arrest the plaintiff and whether the use of force was reasonable.

Additionally, pursuant to Federal Rule of Evidence 403, such evidence has no probative

4

value to the issues before the jury, and would create the possibility of significant prejudice to the plaintiff and confuse or distract the jury from the issues in this case. As such, any general argument or questioning of witnesses regarding gun violence or crime in general in the City of Chicago should be barred.

### <u>PLAINTIFF'S MOTION IN LIMINE # 6</u>

**DEFENDANTS SHOULD BE BARRED FROM INTRODUCING ANY EVIDENCE OR ARGUMENT TO BOLSTER THE CHARACTER OF DEFENDANTS**

The Defendants should be barred from eliciting testimony that would bolster defendants' character as police officers. Any testimony regarding prior military service, awards, commendations or honorable mentions would constitute impermissible bolstering and is irrelevant to the material issues in this lawsuit and prejudicial to the Plaintiff. As such, any evidence or argument in this regard should be barred pursuant to F.R.E. 401, 402, 403 and 404.

### <u>Motion in Limine # 7</u>

**DEFENDANTS SHOULD BE BARRED FROM ANY QUESTIONING INTRODUCING ANY EVIDENCE REGARDING STREET GANGS**

Defendants should be barred from arguing, inferring, questioning any witness or introducing any evidence or opinion regarding the Gangster Disciples or any alleged membership in the Gangster Disciples. This gang evidence is irrelevant to any issue in this case, and is therefore inadmissible. Even if relevant, any minimal probative value is substantially outweighed by the prejudicial effect of such evidence. Such evidence would serve solely to inflame the passions of the jury and deny the Plaintiff a fair trial. Furthermore, this evidence is also inadmissible as an improper character attack upon the Plaintiff.

Defendants should be barred from arguing, inferring, questioning any witness or introducing any gang evidence, including Plaintiff's alleged membership in the Gangster Disciples. Such evidence or argument is irrelevant and should be excluded pursuant to Federal Rules of Evidence 401 and 402 as such evidence lacks any tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. The issues in this case are whether the Plaintiff was falsely arrest, maliciously prosecuted, and whether aexcessive force was used against the Plaintiff. These issues are not advanced, even to a minimal degree, by evidence or argument regarding the Gangster Disciples, the Plaintiff's alleged membership in that gang, or that gang's involvement in a drug war. Gang related evidence is completely irrelevant to the Plaintiff's claims and would not justify, exonerate or even tend to explain the conduct of the Defendants as alleged in the complaint.

Even if somehow relevant, any minimal probative value of this evidence is substantially outweighed by the prejudicial effect of such evidence and, as such, it should be excluded pursuant to Federal Rule of Evidence 403. The probative value of this evidence would be truly negligible. Plaintiff's alleged membership in a gang is considerably removed from the issue of whether the firearm or cannabis that was found during the execution of the search warrant belonged to the Plaintiff. See United States v. Irvin, 87 F.3d 860 (7th Cir. 1996) (noting minimal probative value of gang evidence in determining that district court erroneously admitted gang evidence).

In contrast, this evidence is highly prejudicial and inflammatory and the danger of unfair prejudice would substantially outweigh any probative value. The Seventh Circuit has repeatedly recognized the dangers of admitting gang evidence of this sort. United States v. Rodriquez, 925 F.2d 1049, 1053 (7th Cir. 1001) ("[E]vidence of membership in a street gang is likely to be 'damaging to [a defendant]' in the eyes of the jury.' "); United States v. Lewis, 910 F.2d 1367 (7th

Cir. 1990) (recognizing that gangs have a very negative image and poor public relations).
Because of these obvious and attendant prejudices that necessary accompany the admission of
gang evidence, the Seventh Circuit has "required careful consideration by district courts in
determining the admissibility of gang membership and gang activity evidence." United States v.
Irvin, 87 F.3d at 865.

Almost every individual in society would be angered by the thought of gang membership
and the violence associated with gangs and the drug trade. This evidence would invite the jury to
find against the Plaintiff based on factors that are not germane to the issues of this case; possibly
denying him recovery solely because of the evidence that he was connected to a gang. See
United States v. Irvin, 87 F.3d at 865-66 ("Gangs generally arouse negative connotations and
often invoke images of criminal activity and deviant behavior. There is therefore always the
possibility that a jury will attach a propensity for committing crimes to defendants who are
affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict.").
This evidence would suggest a result based on an improper emotional basis, or at the very least it
would confuse the issues and mislead the jury to focus on collateral issues rather than the alleged
actions of the defendant officers. United States v. Irvin, 87 F.3d at 866. Jurors would be hard-
pressed to award damages to a known gang member, even if they believed he was wronged.

Finally, evidence of the Plaintiff's alleged gang involvement and any link to gang related
violence would be inadmissible under Federal Rule of Evidence 404(b). A party cannot introduce
evidence of an individual's other crimes, wrongs, or acts solely to prove the character of a person
in order to show action in conformity therewith. Fed. R. Evid. 404(b). This gang evidence is
classic negative character evidence and is not relevant to any material issue. Instead, its only use
would be to establish impermissibly the general character of the Plaintiff. Nor can this evidence
be considered sufficiently reliable for admission under 404(b) as it is completely unconnected to

7

the Plaintiff and based on second hand information from an unidentified source. Moreover, even if somehow crafted to appear probative to a material issue, the value of this evidence is substantially outweighed by the substantial danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to deny or limit any recovery by the Plaintiff because of his alleged gang membership.

In sum, Defendants should be barred from arguing, inferring, questioning any witness or introducing any evidence or opinion regarding the Gangster Disciples or the Plaintiff's alleged membership in the Gangster Disciples. This evidence is irrelevant and should not be admitted for any purpose. Even if relevant, the prejudicial effect of this notoriously negative evidence substantially outweighs any minimal probative value. Finally, this evidence should be barred as improper character evidence. As such, questioning regarding gangs or gang affiliation should be barred pursuant to F.R.E. 401,402,403 and 404.

## Motion in Limine # 8

### DEFENDANTS SHOULD BE BARRED FROM ANY QUESTIONING OR INTRODUCING ANY EVIDENCE REGARDING ANY TATOOS

Plaintiff has a tattoo of a cross on his chest that reads: "Only God and Judge Me." This tattoo was not visible at the time of Plaintiff's arrest and played no part in the Defendants decision to arrest the Plaintiff. Any mention of Plaintiff's tattoo is therefore irrelevant to any issues in the case and has no probative value. Any questions regarding the Plaintiff's tattoos would also serve as an improper character attack to cast the Plaintiff in a negative light before the jury. As such, this evidence of any tattoos should be barred pursuant to F.R.E. 401,402,403 and 404.

## Motion in Limine #  9

### DEFENDANTS SHOULD BE BARRED FROM ANY QUESTIONING OR INTRODUCING ANY EVIDENCE REGARDING THE I.P.R.A. INVESTIGATION

As outlined in Plaintiff's Motions in Limine No 1 and No. 2 above, the I.P.R.A. file regarding Plaintiff's arrest was not disclosed until January 26, 2011, *after* discovery closed and this matter was scheduled for trial.  The I.P.R.A. investigation itself is irrelevant and any conclusions or findings of the I.P.R.A. alleged "investigation" should be barred.

### PLAINTIFF'S MOTION IN LIMINE #10
### Plaintiff's Prior Felony Convictions

In the instant case, Plaintiff was arrested on September 16, 2008 and charged with a felony offense of unlawful possession of a controlled substance and misdemeanor offenses of battery to a police officer, resisting arrest and solicitation of unlawful business.   Plaintiff has three (3) prior felony convictions which the defense has indicated it will use for impeachment purposes: **04CR-22768**, plaintiff was sentenced felony probation for a cannabis case on May 17, 2006;  **03CR-03284**, plaintiff was sentenced to four (4) years in the Illinois Department of Corrections for a felony narcotics offense on April 10, 2003;  and in **98CR-196301** Plaintiff  was sentenced to three (3) years in I.D.O.C. on August 16, 1999 for Unlawful Use of a Weapon. Plaintiff requests the Court exercise it's discretion to limit the number of convictions used for impeachment, in particular the 1998 U.U.W. case, as the prejudicial effect will outweigh any probative value.

#### A.  Details of Plaintiff's Felony Convictions

Defendants should also be barred from arguing, inferring, questioning any witness, introducing any evidence or making any comments regarding the underlying details of any of the

Plaintiff's three felony convictions and any of the sentences he received, and should be limited to eliciting just the fact Plaintiff has prior felony convictions. While the convictions may be admissible to impeach the Plaintiff under Rule 609(a)(1), the underlying facts of these offenses have no bearing on his credibility and should be excluded pursuant Rules 401 and 402 as they lack any tendency to make the existence of a material fact more probable or less probable than it would be without the evidence.

Moreover, even if probative to a material issue, the value of this evidence is substantially outweighed by the danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to factor Plaintiff's criminal history into its deliberations. This will cause the jury to focus on the underlying criminal behavior, rather than on the conviction itself that is relevant for purposes of determining the Plaintiff's credibility.

Even though these convictions are within the framework established under Rule 609, the cumulative effect of admitting all of these convictions would deny the Plaintiff his right to a fair trial. Although some of these three felony convictions would undoubtedly be admissible, the Plaintiff appeals to this Courts exercise of its discretion to exclude at least some of these convictions so that Plaintiff could receive a fair trial. The admission of a second and third felony conviction no longer serves its function to impeach the credibility of the Plaintiff, but rather serves to portray the Plaintiff as a career criminal who is unworthy of receiving an award from the jury regardless of the actions of the officers or the injuries he received.

### B. Cumulative Prejudicial Effect

Moreover, even if probative to a material issue, the value of this evidence is substantially outweighed by the danger of confusion and unfair prejudice as it tends to subordinate reason to emotion in the fact-finding process by influencing the jury to factor Plaintiff's criminal history

into its deliberations. This will cause the jury to focus on the underlying criminal behavior, rather than on the conviction itself that is relevant for purposes of determining the Plaintiff's credibility.

"[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992). "In exercising discretion on admission of prior convictions, the court must consider several factors, most importantly the danger of unfair prejudice. When the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary." *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) (citations omitted); see also *United States v. Harding*, 525 F.2d 84, 90 (7th Cir. 1975)(noting that the similarity between a prior drug offense and the present drug offense created a strong risk of unfair prejudice); *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001) (" The main issue for both of his claims is whether the officers had reasonable suspicion to believe that he was involved in a drug transaction, and a jury might improperly consider evidence of his prior convictions for similar offenses as an indication that the officers had a reason to suspect him of the same activity here.")

Even though these convictions are within the framework established under Rule 609, courts may permit the sanitization of prior crime evidence used to impeach by concealing the nature or name of the crime. *Schmude v. Tricam Inc.*, 556 F. 3d 624, 627 (7th Cir. 2009)(citing *United States v. Stokes*, 211 F. 3d 1039, 1042-43 (7th Cir. 2000). The danger of unfair prejudice from the admission of Plaintiff's narcotic convictions from 2006 and 2003 is substantial. There is a significant risk that the jury will improperly believe the Defendants version of events because Plaintiff was previously engaged in criminal behavior, improper propensity evidence,

and not because evidence of his prior criminality reflects on his truthfulness. As such, Plaintiff requests the Court limit the number of prior felony convictions for impeachment purposes and order the specific details of the crimes not be disclosed

## PLAINTIFF'S MOTION IN LIMINE # 11

**TO BAR ALL REFERENCES TO PLAINTIFFS' NEIGHBORHOOD AS A "HIGH CRIME AREA," "HIGH DRUG AREA," OR ANY OTHER SIMILAR IRRELEVANT AND/OR PREJUDICIAL CHARACTERIZATIONS**

Plaintiff was arrested inside a store located at 658 E. 67th Street in Chicago. Characterization of this area as a "high crime" area or "high drug" area is irrelevant to the specific issues in this case and severely prejudicial to the Plaintiff. If the officers' characterization of the neighborhood is based solely on the officers' subjective belief about the neighborhood, it is inadmissible under Federal Rule of Evidence 403, and has no relevance to the objective standard that governs when law enforcement officers possess reasonable suspicion that criminal activity is afoot in order to conduct an investigative search under *Terry v. Ohio*. *See* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure of the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"). The Fourth Amendment's objective standard ensures that instances of police misconduct cannot later be justified as lawful based on the officer's subjective belief about the circumstances surrounding the interaction. The Fourth Amendment holds police officers to an objective standard and the defendant officers similarly must be held to this standard.

Moreover, evidence that Plaintiffs purportedly lived in a high crime, drug, or gang neighborhood creates an undue risk of unfairly prejudicing Plaintiffs without any corresponding probative benefit. Until Defendants can satisfy the Court that there is some relevance other than

unfair guilt by association, they should be barred from asking witnesses whether this was or was not a high crime, drug, or gang area. *See United States v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996) (observing the considerable danger of unfair prejudice from evidence that suggests guilt by association); *United States v. Doe*, 149 F.3d 634, 638 (7th Cir. 1998) ("[J]uries should not conclude that a particular defendant is guilty simply because the defendant shares some characteristics with a particular group."). Plaintiffs concede that officers are allowed to draw on their experiences and specialized training in making inferences and deductions based on the totality of the circumstances. *See United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

However, the totality of the circumstances can only be guided by objective information, and not simply on the officers' subjective beliefs that have no basis in fact. If the area is not objectively a "high crime area" as the defendant officers contend, then the officers' subjective beliefs about the neighborhood are irrelevant. Defendants should be barred from concocting this after-the-fact justification for their unlawful arrest of the Plaintiff.

Defendants' attempts to color the block as a "high crime area" steeped in drugs, gangs, and guns is an impermissible and unjustified attempt to pander to the fear of jurors in order to justify their unlawful conduct. Therefore, any evidence or testimony regarding the neighborhood as being a "high crime area" constitutes evidence that is vastly more prejudicial than probative of any legitimate issue in this trial and is inadmissible under Federal Rule of Evidence 403.

WHEREFORE, plaintiff prays this Court grant the motions in limine outlined herein.

Respectfully submitted,

/s/ Jeffrey J. Neslund

13

One of Plaintiff's Attorneys

Law Offices of Jeffrey J. Neslund
150 North Wacker Drive
Suite 2460
Chicago, IL 60606
(312) 223-1100